IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

JOE FIGUEROA                         §
    TDCJ-CID NO. 1459030         §
v.                                   §        C.A. NO. C-11-009
                                    §
RICK THALER                          §

## OPINION AND ORDER GRANTING
## RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Petitioner is a state prisoner currently incarcerated at the McConnell Unit in Beeville, Texas.  On January 11, 2011, he filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254, alleging ineffective assistance of counsel.  (D.E. 1).  Pending is Respondent's motion for summary judgment.  (D.E. 9).  On February 28, 2011, Petitioner filed a response.  (D.E. 13).  For the reasons stated herein, Respondent's motion for summary judgment is granted and the petition is dismissed.

## I. JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 2241, 2254, which provide that jurisdiction is proper where the inmate is confined, or where the conviction was obtained.  Wadsworth v. Johnson, 235 F.3d 959, 961-62 (5th Cir. 2002). Petitioner was convicted in Nueces County, Texas and is confined in Beeville, Texas.  (D.E. 8, at 48-49; D.E. 13, at 4).  Jurisdiction is, therefore, proper in this Court.  28 U.S.C. § 124(b)(6). After consent by the parties, (D.E. 7, 11), the case was referred to a magistrate judge to conduct all further proceedings, including entry of final judgment.  (D.E. 12); see also 28 U.S.C. § 636(c).

## II.  FACTUAL BACKGROUND

On July 24, 2006, Adrian Dominguez, a Corpus Christi Police officer, submitted an affidavit for a warrant to search an apartment for drugs and arrest the man suspected of "controlling" the residence.  (D.E. 8, at 64).  In the affidavit, Officer Dominguez described the apartment in detail, providing its address, its location within the apartment complex, and its physical attributes.  Id.  He also described the suspect by his approximate age, ethnicity, and appearance, as well as setting forth the information giving rise to the suspicion of criminal activities.  Id.[1]  A Nueces County judge signed the warrant authorizing the search and arrest.  Id. at 65.

On July 27, 2006, the police executed the search warrant, seizing crack cocaine, prescription medications, and various items related to drug distribution.  Id. at 66, 103, 108. They arrested Petitioner and his girlfriend at the apartment.  Id. at 34-36, 106-07.  On January 8, 2007, his court-appointed defense counsel filed a motion to suppress the evidence seized at the residence and his statements to the police on Fourth, Fifth, and Sixth Amendment grounds.  Id. at 37-40.  She argued, inter alia, that the affidavit supporting the warrant failed to establish probable cause, and that the warrant was fatally vague and based on stale information.  Id. at 38-39.

On June 27, 2007, after the case had been transferred to a different Nueces County trial court, Petitioner entered a guilty plea.  Id. at 70-79, 99-100.  The court admonished him in writing of his rights and the consequences of the plea, including those related to his waiver of the right to appeal.  Id. at 70-79.  Petitioner indicated that he understood those consequences and

---

[1] Petitioner questions the authenticity of the probable cause statement because he has obtained a copy of the affidavit signed by the judge that omits that statement.  (D.E. 8, at 33).

rights.  Id. at 76-78.  He also swore that he was satisfied with the quality of his attorney's representation.  Id. at 76.  Petitioner was convicted of possession of cocaine with intent to deliver and sentenced to ten years incarceration.  Id. at 48-49.

### III.  PROCEDURAL BACKGROUND

On March 3, 2009, Petitioner filed an application for habeas relief in state court, arguing that he received ineffective assistance from his court-appointed counsel because she failed to conduct an adequate pre-trial investigation, failed to challenge the warrant leading to his arrest, failed to transfer the motion to suppress to the ultimate trial court, and failed to advise him of the deficiencies in the evidence assembled against him.  Id. at 13, 22-32.  The State answered the application on March 25, 2009, arguing that he had not demonstrated with sufficient specificity how his prosecution would have had a different outcome if his counsel had taken the actions he retrospectively demanded of her.  Id. at 44-46.  On April 7, 2009, Petitioner filed objections to the State's answer, reiterating his complaints.  Id. at 84-85.  That same day, the trial court ordered the State to provide further briefing on his claims regarding ineffective assistance of counsel and the allegedly defective search warrant.  Id. at 89.

On May 29, 2009, the State filed a supplemental answer to Petitioner's application, arguing that the warrant affidavit established probable cause for the search and arrest, that the failure to transfer the motion to suppress was based on a reasonable legal strategy, and that he failed to surmount the heavy burden imposed on a defendant who challenges a plea after being admonished of its consequences.  Id. at 56-60.  The supplemental response included an affidavit by Petitioner's trial counsel, wherein she represented that she believed the warrant affidavit did establish probable cause.  Id. at 62.  She further explained that she did not re-file the motion to

3

suppress in the trial court because she feared that insisting before trial that her client had standing to challenge the warrant would compromise her ability to argue at trial that his association with the searched residence was tenuous and that he therefore could not have known of the drugs.  Id.  Defense counsel swore that she advised Petitioner of the advantages and disadvantages of pleading guilty and exerted no pressure on him to plead.  Id. at 63.  Finally, she related that she had been prepared to argue the case in court, but that Petitioner elected to plead guilty the day trial was set to begin.  Id.  The supplemental response also included the warrant with the affidavit.  Id. at 64-65.

On June 17, 2009, Petitioner submitted supplemental objections to the State's answer, questioning the authenticity of the warrant affidavit because the copy he had in his possession had no probable cause statement and was also signed and dated by the judge.  Id. at 92, 105.  He also questioned his counsel's purported trial strategy regarding the warrant as inconsistent with her ultimate advice to him to plead guilty, contending that such a strategy would have been premised on a belief in his innocence.  Id. at 93.  On December 30, 2009, the trial court recommended that habeas relief be denied for the reasons suggested by the State.  Id. at 54.  The Court of Criminal Appeals denied the application without written order on January 27, 2010.  Id. at 2.

On January 11, 2011, Petitioner filed his federal petition for habeas corpus pursuant to 28 U.S.C. § 2254.  (D.E. 1).  Respondent filed an answer and motion for summary judgment on February 17, 2011.  (D.E. 9, 10).  On February 28, 2011, Petitioner filed a response.  (D.E. 13).

## IV. PETITIONER'S ALLEGATIONS

Petitioner alleges that his defense attorney rendered him ineffective assistance when she failed to challenge the search warrant authorizing the seizure that led to his arrest and conviction. (D.E. 1, at 7).

## V. DISCUSSION

Respondent seeks summary judgment and dismissal of the petition on the grounds that it is time-barred and without merit. (D.E. 9).

**A.     The Standard Of Review For Summary Judgment Motions.**

Rule 56 of the Federal Rules of Civil Procedure applies to federal habeas corpus cases. Clark v. Johnson, 202 F.3d 760, 764-65 (5th Cir. 2000) (citations omitted). Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Courts must consider the record as a whole, including all pleadings, depositions, affidavits, interrogatories and admissions on file, in the light most favorable to the non-movant. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002) (citations omitted).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact and informing the court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988) (citation omitted). Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party. See Lujan v. Nat'l Wildlife Fed'n,

5

497 U.S. 871, 888 (1990); <u>Williams</u>, 836 F.2d at 960 (citation omitted).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-87 (1986); <u>Fields v. City of S. Houston</u>, 922 F.2d 1183, 1187 (5th Cir. 1991) (citation omitted).  The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment.  Fed. R. Civ. P. 56(e); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986) (citation omitted).  Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof.  <u>Celotex</u>, 477 U.S. at 322-23; <u>ContiCommodity Servs., Inc. v. Ragan</u>, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted).

**B.      Federal Habeas Corpus Standard Of Review Pursuant To The AEDPA.**

Federal habeas relief is available to a state prisoner only if he is being held in violation of the Constitution, laws, or treaties of the United States.  <u>Boyd v. Scott</u>, 45 F.3d 876, 881 (5th Cir. 1994) (per curiam) (citation omitted).  Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), courts may not grant habeas relief unless a petitioner demonstrates that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," or was "based on an unreasonable determination in light of the facts." 28 U.S.C. § 2254(d).  Thus, "federal habeas relief is only merited where the state court decision is both incorrect *and* objectively unreasonable."  <u>Morrow v. Dretke</u>, 367 F.3d 309, 313 (5th Cir. 2004) (emphasis in original) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 411 (2000)); <u>see</u> <u>also</u> <u>Riddle v. Cockrell</u>, 288 F.3d 713, 716 (5th Cir. 2002).  The AEDPA's provisions "ensure that

state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002) (citing Williams, 529 U.S. at 403-04).

The Supreme Court has concluded that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. Id. at 694 (citing Williams, 529 U.S. at 404-05). The Bell Court elaborated on the distinctions between "contrary to" and an "unreasonable application:"

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one.

Id. (citations omitted).

The Fifth Circuit has explained that the "contrary to" clause applies where a "state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (citation omitted). The Fifth Circuit has further determined that "§ 2254(d) permits a federal habeas court 'to review only a state court's 'decision' and not the written opinion explaining that decision.'" St. Aubin v. Quarterman, 470 F.3d 1096, 1100 (5th Cir. 2006) (citing Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam)); accord Anderson v. Johnson, 338 F.3d 382, 390 (5th Cir. 2003) (citation omitted). The state court's "ultimate decision" is to be tested for

reasonableness, "not every jot of its reasoning." Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001).  Furthermore, a state court need not cite, or "even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'"  Mitchell v. Esparza, 540 U.S. 12, 16 (2003) (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

Absent a direct conflict with Supreme Court authority, habeas relief is available if a state court decision is objectively unreasonable.  Montoya v. Johnson, 226 F.3d 399, 404 (5th Cir. 2000).  A federal district court "must reverse when [it] conclude[s] that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'"  Gardner v. Johnson, 247 F.3d 551, 560 (5th Cir. 2001).  As with the "contrary to" test, the focus of the "unreasonable application" test is "on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of evidence."  Neal, 286 F.3d at 246.

Finally, "[t]he AEDPA requires that [the Court] presume correct the state court's findings of fact unless the petitioner 'rebut[s] the presumption of correctness by clear and convincing evidence.'"  Morrow, 367 F.3d at 315 (quoting 28 U.S.C. § 2254(e)(1)).  The presumption of correctness is also accorded to adjudications made during state post-conviction proceedings.  Id.  The burden to rebut the presumption of correctness remains on the petitioner even if the state "hearing was a 'paper' hearing and may not have been full or fair."  Id. (citing Valdez v. Cockrell, 274 F.3d 941, 950-51 (5th Cir. 2001)).  In some circumstances, findings of fact may be implied from conclusions of law.  See Valdez, 274 F.3d at 948 n.11 ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated

findings which are necessary to the state court's conclusions of mixed law and fact.") (citations omitted); Goodwin v. Johnson, 132 F.3d 162, 183-84 (5th Cir. 1997).

**C.      The Petition Is Barred By The Statute Of Limitations.**

Respondent contends that Petitioner's claim is barred by the statute of limitations.  (D.E. 9, at 3-5).  The AEDPA provides a one-year limitation period for filing a federal habeas petition in district court by a person in custody pursuant to the judgment of a state court.  28 U.S.C. § 2244(d)(1).  That period runs from the latest of four alternative dates:

> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id.  Nevertheless, certain actions will toll the limitation period.  For example, a prisoner may not be granted federal habeas relief unless he has first sought state habeas review and been denied relief.  28 U.S.C. § 2254(b)(1).  While a prisoner seeks that state review, the AEDPA one-year period will be tolled:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

9

28 U.S.C. § 2244(d)(2).

Petitioner's claims concern his guilty plea and circumstances precipitating it. Furthermore, he does not claim that any impediment prevented him from filing his petition, or that a newly recognized Constitutional right applies to his case. Finally, there is no evidence that the factual predicate underlying Petitioner's claim was discoverable only after his conviction became final. Indeed, Petitioner has indicated that the purportedly flawed warrant affidavit is the "original," as distinguished from the "copy" presented by his attorney in the state habeas proceedings. (D.E. 8, at 92). He therefore presumably possessed this affidavit from the early stages of the prosecution against him. If not, he could have accessed it from his trial record, where he apparently obtained the other documents submitted and referenced in his state and federal habeas filings. See Libby v. Magnusson, 177 F.3d 43, 50 (1st Cir. 1999) (assuming habeas petitioner's familiarity with trial record for purposes of determining start-date of limitation period). Notably, Petitioner's filings in his state habeas application strongly suggest that he came across the allegedly defective affidavit earlier than when he first saw the purportedly fraudulent version. (D.E. 8, at 92). At the very least, he has not suggested that any obstruction delayed his uncovering of the "original," defective affidavit in the face of diligent research. See generally Starns v. Andrews, 524 F.3d 612, 617-21 (5th Cir. 2008) (discussing application of § 2244(d)(1)(D)). Thus, § 2244(d)(1)(A) applies, and the AEDPA statute of limitations began running when Petitioner's judgment became final.

Petitioner's conviction was entered on June 27, 2007. (D.E. 8, at 48-49). In Texas, a defendant has thirty days from the date a sentence is imposed to file a notice of appeal. Tex. R. App. P. 26.2(a)(1). If a defendant has signed a plea agreement and waived his right to appeal,

his judgment still becomes final at the expiration of that thirty-day period for purposes of § 2244(d)(1)(A). McCollum v. Quarterman, No. H-07-906, 2007 WL 2428293, at *1 (S.D. Tex. Aug. 21, 2007) (unpublished); Bethea v. Girdich, 293 F.3d 577, 578 (2d Cir. 2002) (per curiam) (assuming AEDPA limitation period begins running when statutory window to appeal state conviction closes, even for defendant who pleads guilty and waives right of appeal). Therefore, Petitioner's AEDPA statute of limitations began running on July 27, 2007. See Tex. R. App. P. 4.1(a). Consequently, the period was set to expire after July 27, 2008. His state application for habeas relief did not toll the limitation period because he did not file it until March 3, 2009, well after the deadline had lapsed. (D.E. 8, at 131); see also Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000) (petitioner's "state habeas application did not toll the limitation period under § 2244(d)(2) because it was not filed until *after* the period of limitation had expired") (emphasis in original). As a result, Petitioner's claim is barred by the statute of limitations.

There are circumstances in which habeas petitioners should be granted equitable tolling. The decision to invoke that doctrine is within the discretion of the district court. See Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999). A state prisoner seeking federal habeas relief is "'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, __ U.S. __, 130 S. Ct. 2549, 2562 (2010) (citation omitted).

The Fifth Circuit "has held that equitable tolling of the AEDPA limitations period is available 'in rare and exceptional circumstances' where it is necessary to 'preserve[] a [petitioner's] claims when strict application of the statute of limitations would be inequitable.'" Johnson v. Quarterman, 483 F.3d 278, 286 (5th Cir. 2007) (quoting Fierro v. Cockrell, 294 F.3d

11

674, 682 (5th Cir. 2002)).  Excusable neglect or ignorance of the law do not justify equitable

tolling.  Fierro, 294 F.3d at 682.  Equitable tolling of the limitation period applies principally

where the petitioner is actively misled by the respondent about the petition, or is prevented in

some extraordinary way from asserting his rights.  Coleman v. Johnson, 184 F.3d 398, 402 (5th

Cir. 1999) (per curiam) (citation omitted).  A prisoner proceeding pro se is not a "rare and

exceptional" circumstance.  Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000) (citations

omitted).  When considering equitable tolling in the habeas context, courts "exercise judgment in

light of prior precedent, but with awareness of the fact that specific circumstances, often hard to

predict in advance, could warrant special treatment in an appropriate case."  Holland, __ U.S. __,

130 S. Ct. at 2563.

 In reply to Respondent's argument that the petition is time-barred, Petitioner argues only

that the deadlines imposed by AEDPA do not apply where a petitioner makes "a substantial

showing of the denial of a constitutionally guaranteed right and prejudice resulting therefrom."

(D.E. 13, at 1-2).  However, the case he cites, Slack v. McDaniel, 529 U.S. 473 (2000), does not

stand for that proposition.  Rather, in Slack, the discussion of such a showing dealt with the

issuance of certificates of appealability, a manifestly inapposite context.  Id. at 478-90.  The

standards governing forgiveness for late habeas petitions are well-established and Petitioner has

not met them.  He has not shown that he pursued his rights diligently, and he has not shown that

an extraordinary circumstance prevented a timely filing.  Holland, __ U.S. __, 130 S. Ct. at 2562.

A review of the record does not suggest either.  Accordingly, Petitioner is not entitled to

equitable tolling.

**D.     Petitioner's Claim Is Without Merit.**

Respondent argues in the alternative that Petitioner's claim is without merit.  (D.E. 9, at 5-6).  In particular, he contends that Petitioner waived any challenge to his counsel's effectiveness based on the search warrant's alleged defects when he pled guilty.  Id.

Respondent is correct that a defendant who pleads guilty can only attack his attorney's effectiveness insofar as the attack relates to "the issues of voluntariness and his understanding of the nature of the charges brought against him and the consequences of his plea."  Haynes v. Butler, 825 F.2d 921, 924 (5th Cir. 1987) (citing Hill v. Lockhart, 474 U.S. 52 (1985)).  That waiver encompasses arguments that hinge, like Petitioner's, on whether searches and seizures were conducted in violation of the Fourth Amendment.  Grabowski v. Jackson Cnty. Pub. Defenders Office, 47 F.3d 1386, 1390 (5th Cir. 1995) (citations omitted).  As a result, he cannot raise the claim on federal habeas review.

In his state application for habeas relief, Petitioner suggested that his attorney's failure to challenge the warrant did relate to the voluntariness of his plea.  (D.E. 8, at 13).  Accepting this connection arguendo, his claim still fails.

To prevail on a claim of ineffective assistance of counsel, a state prisoner seeking federal habeas corpus relief bears the burden of showing that: (1) counsel's performance was deficient, and (2) the deficient performance resulted in actual prejudice.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  However, a reviewing court need not consider both prongs if the court concludes that petitioner has failed to prove either.  Id. at 697; Amos v. Scott, 61 F.3d 333, 348 (5th Cir. 1995) (citation omitted).

In order to show counsel's performance was deficient, petitioner must show "that counsel

made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.  He must demonstrate that counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards.  See Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998) (citation omitted).

Counsel's challenged conduct should be evaluated from the perspective of counsel at the time the conduct occurred.  Strickland, 466 U.S. at 690.  Due to the difficulties inherent in engaging in this analysis without being tainted by "the distorting effects of hindsight," a court's review should be highly deferential to counsel.  Id. at 689.  The reviewing court indulges in a strong presumption that counsel has exercised reasonable professional judgment.  Id. at 690. The Supreme Court has recently reminded that "the standard for judging counsel's representation is a most deferential one" because "[u]nlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge."  Harrington v. Richter,  __ U.S. __, 131 S. Ct. 770, 788 (2011).

The Fifth Circuit has explained that due to "the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices."  Yohey v. Collins, 985 F.2d 222, 228 (5th Cir. 1993).  In addition, "'[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'"  Johnson v. Dretke, 394 F.3d 332, 337 (5th Cir. 2004) (citations omitted).

14

Under the second prong of the <u>Strickland</u> two-part test, Petitioner may not simply allege, but must affirmatively prove, actual prejudice resulting from the ineffective assistance of counsel.  <u>Strickland</u>, 466 U.S. at 693.  Thus, he must affirmatively show that his counsel's actions deprived him of a fair trial.  <u>See</u> <u>Czere v. Butler</u>, 833 F.2d 59, 64 (5th Cir. 1987).  Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  <u>Strickland</u>, 466 U.S. at 694; <u>see also</u> <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 372 (1993) (habeas petitioner must show that the trial result was unreliable, or the proceeding was fundamentally unfair due to counsel's deficient performance) (citations omitted).  "The likelihood of a different result must be substantial, not just conceivable."  <u>Harrington</u>,  __ U.S. __, 131 S. Ct. at 792 (citation omitted).

Petitioner has the burden of proof under the <u>Strickland</u> test.  <u>See</u> <u>Carter v. Johnson</u>, 131 F.3d 452, 463 (5th Cir. 1997) (holding burden of proof is on petitioner in a federal habeas proceeding).  In addition, the Supreme Court has recently reiterated that "[w]hether before, during, or after trial, when the Sixth Amendment applies, the formulation of the standard is the same: <u>reasonable competence</u> in representing the accused."  <u>Premo v. Moore</u>, __ U.S. __, 131 S. Ct. 733, 742 (2011) (emphasis added) (citing <u>Strickland</u>, 466 U.S. at 688).  Conclusory allegations of ineffective assistance of counsel do not give rise to constitutional claims for habeas relief.  <u>Collier v. Cockrell</u>, 300 F.3d 577, 587 (5th Cir. 2002) (citations omitted).

Petitioner's ineffective assistance claim fails for several reasons.  First, the Texas courts have already considered and rejected it.  The arguments that he pursues in the instant petition were raised in his state habeas corpus application.  (D.E. 8, at 13).  The trial court entered its recommendation that Petitioner's claims be denied.  <u>Id.</u> at 54.  The Court of Criminal Appeals

15

then denied his state habeas application without written order based on the findings of the trial court.  Id. at 2.

This denial of Petitioner's application, even though it does not contain a written opinion, is not silent or ambiguous.  See Ex Parte Torres, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (en banc) (holding a "denial" signifies an adjudication on the merits).  It is a decision on the merits and is entitled to the AEDPA's deference.  28 U.S.C. § 2254(d); see also Neal, 286 F.3d at 235 ("In the context of federal habeas proceedings, adjudication 'on the merits' is a term of art that refers to whether a court's disposition of the case was substantive.") (citation omitted). Thus deference to the state court decision is mandated by § 2254(d).  See Morrow, 367 F.3d at 313.

Second, Petitioner vouched for his attorney's effectiveness in his plea agreement, placing a "heavy burden" on his attempt to cast doubt on the quality of her representation and creating a presumption in the truth of his endorsement.  United States v. Diaz, 733 F.2d 371, 373-74 (5th Cir. 1984) (citation omitted); see also United States v. Fuller, 769 F.2d 1095, 1099 (5th Cir. 1985).  He has provided nothing to overcome this burden, for he has pointed to nothing in his attorney's conduct that would constitute ineffective assistance.  Her decision not to challenge the search warrant was based on a reasonable litigation strategy.  She was wary of being drawn into a debate over Petitioner's standing to challenge the warrant (in which she would have been compelled to stress his ties to the apartment) for fear that it would compromise her ability to persuasively argue at trial that he could not have known of the drugs given his tangential association with the property.  (D.E. 8, at 62).

Given that Petitioner was one of two people arrested in an apartment where drugs and

16

drug paraphernalia were found, trial counsel's determination that the most fruitful possible argument at trial would emphasize his transitory relationship to the residence was eminently reasonable.  See Cannon v. Lafler, 247 F. App'x 796, 799 (6th Cir. 2007) (unpublished) (discussing defendant making that argument).  The self-evident tension between these two positions could have jeopardized Petitioner's defense at trial and thereby subjected him to a conviction which carried with it more severe penalties than those he faced pursuant to his plea agreement.

Petitioner's contentions notwithstanding, there is nothing suspicious or troubling about the fact that his counsel attempted to preserve a potential trial defense before ultimately encouraging–or acquiescing in–a guilty plea.  On the contrary, it was her duty to pursue possible defenses based on shortcomings in the inculpatory evidence and likewise her duty to advise him on the advantages and disadvantages of a guilty plea.  See Polk Cnty. v. Dodson, 454 U.S. 312, 323 (1981) ("a defense attorney has a duty to advance all colorable claims and defenses"); Padilla v. Kentucky, __ U.S. __, 130 S. Ct. 1473, 1480-81 (2010) ("Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'") (citation omitted).

On top of everything else, it appears that there was in fact probable cause to search the apartment and arrest Petitioner.  To be sure, it is peculiar that the judge appears to have signed a copy of the warrant affidavit which omitted a statement of probable cause, and it is understandable that this absence has given Petitioner pause.  (D.E. 8, at 33).  Nevertheless, the actual warrant is accompanied by the affidavit that does contain the probable cause statement. Id. at 64-65.  Furthermore, Petitioner has never demonstrated any insufficiency in the only

probable cause statement that is in the record.  Nor has he provided any reason to doubt that the judge relied upon that statement in authorizing the warrant.  It is difficult to imagine otherwise, particularly in light of defense counsel's evident belief in the statement's authenticity, as well as the documentation concerning the police investigation of the residence.  Id. at 62.

Petitioner's view that the warrant's description of him was fatally vague is equally misguided.  Id. at 23.  The warrant described the suspect as a Hispanic male in his sixties, with gray hair, brown eyes, and a goatee, as well as identifying him as the man "in charge of" the apartment, which was in turn described with great specificity.  Id. at 33.  That description was sufficiently specific to satisfy the demands of the Fourth Amendment.  See, e.g., United States v. Espinosa, 827 F.2d 604, 611 (9th Cir. 1987) (physical description of suspect in conjunction with his location met specificity requirement where "[t]he warrant and the accompanying, incorporated affidavit left the officers with no discretion" in identifying him) (citations omitted); United States v. Ferrone, 438 F.2d 381, 389 (3d Cir. 1971) ("the physical description of appellant, coupled with the precise location at which he could be found, was sufficient and the John Doe warrant was, therefore, valid") (citing United States v. Ventresca, 380 U.S. 102, 108 (1965)).

Finally, Petitioner's belief that his attorney's purported failures represented a kind of coercion is factually and legally without merit.  (D.E. 8, at 13).  In order to prove that a guilty plea was coerced, a petitioner "must prove that an actual promise was made by showing (1) the exact terms of the alleged promise; (2) exactly when, where, and by whom such a promise was made; and (3) the precise identity of any eyewitness to the promise."  DeVille v. Whitley, 21 F.3d 654, 658 (5th Cir. 1994) (citation omitted).  Petitioner has never alleged any promise, let

alone proven one, and his coercion claim therefore must be rejected.

The state courts' rulings are presumed correct and the plea agreement, with its attestation of effective representation, is presumed true.  The defense attorney's reasonable trial strategy cannot be second-guessed and prejudice is highly unlikely given the facts.  The warrant was not unconstitutional, and the resulting search and arrest were legal.  In light of the overwhelming weight of the law and the facts, the petition is dismissed.

**E.      Petitioner Is Not Entitled To An Evidentiary Hearing.**

In Petitioner's response to the motion for summary judgment he moves for an evidentiary hearing.  (D.E. 13, at 1).  The Fifth Circuit has explained that "[a] hearing in a habeas proceeding is required *only* when, *inter alia*, the record reveals a genuine factual dispute."  Tague v. Puckett, 874 F.2d 1013, 1015 (5th Cir. 1989) (emphasis added) (citation omitted); see also Murphy v. Johnson, 205 F.3d 809, 815-17 (5th Cir. 2000) (discussing basis for evidentiary hearing).  The record reveals no genuine factual dispute that would warrant an evidentiary hearing and Petitioner's request for one is therefore denied.

## VI.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Fifth Circuit from a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although Petitioner has not yet filed a notice of appeal, a district court ruling on a petitioner's relief may sua sponte rule on a certificate of appealability because it is "[a]rguably ... in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious."  Alexander v.

Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam).

The statute establishes that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack, 529 U.S. at 484. This standard requires a § 2254 petitioner to demonstrate that "reasonable jurists could debate whether ... the [petition] should have been resolved in a different manner or that the issues presented ... deserve[d] encouragement to proceed further." United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (citation omitted).

As to claims district courts reject solely on procedural grounds, a petitioner must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Reasonable jurists could not debate this denial on substantive or procedural grounds, nor could they find that the issues presented were adequate to proceed. Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484). Accordingly, Petitioner is denied a certificate of appealability.

## VII. CONCLUSION

Based on the foregoing reasons, Respondent's motion for summary judgment, (D.E. 9), is granted and this habeas petition, (D.E. 1), is dismissed. Additionally, Petitioner is denied a

certificate of appealability.

ORDERED this 14th day of March 2011.

BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE